Good morning, your honors. May it please the court, Gene Barabia on behalf of Mr. Greer. On the issue of whether the district court abused its discretion in admitting the gun evidence or the gun arrest as inextricably intertwined with the charge, I only have several brief points to add. One has to do with the argument I think the government has made consistently in its briefing that, you know, because the phone call was admissible and you didn't object to the phone call, you know, then the gun has to come in because it explains the phone call. And putting aside the foundational issues, you know, I don't think the government quite made the foundation, laid the foundation to let that issue go to the jury. But putting that aside for a moment, I think that's putting sort of the cart before the horse because I think the gun admissibility drives whether the phone call is admissible. First of all, the government wanted to put in a whole bunch more evidence about this weapon than Judge Pregerson allowed, correct? Am I correct about that? I'm not trying to – the other evidence that the government wanted to put in was the drugs that were found on the client. But they wanted to put in some other evidence about the gun, didn't they? Not on that incident. There was a separate incident going back to December of 2003. Perhaps this is what the court is referring to. And that was not allowed in? Yes, I think that's correct. You filed with us a 28-J letter about a case from the D.C. Circuit dated in 2000? Yes, Your Honor. So that case has been on the book for 10 or 11 years? Yes. And you didn't pick it up when you initially filed? I didn't. To be frank, I did not pick up the significance until I got more heavy into preparation for the argument. So I apologize. I'm sure the court doesn't appreciate having to deal with these things. The problem – and this is not by way of criticism, but by way of education for future cases. I don't mean to be critical at all. The earlier you get us a 28-J letter, particularly when it's about a case that's 10 or 11 years old, the more time we have to absorb the importance of that case and how it may affect your client's rights. Okay? Yes, Your Honor. That's the only point. Understood. And actually, if I can briefly digress back to the point that I started with. And then I'll come back to the 28-J letter. My point is simply that if the gun is excluded, I think so is the phone call. Because there is really no way to separate the phone call from the gun. I mean, if you take it out. And, you know, assuming the government can establish a connection between the phone call and the arrest with a gun. If you take the gun out, I mean, the phone call either doesn't make sense or it's four or three. So had my client prevailed on the district court to exclude the gun, I think the phone call would have been out. And the motion to exclude was directed at all evidence of, you know, pertaining to the gun. So I think it was covered. The district court gave a limiting instruction after the evidence was admitted? Yes. Yes, it did. Although I would submit that it didn't really limit much, but there was a limited instruction. Did you object to it? No. I know you objected to the admission of the gun at all. But did you object to the instruction at all? I think not the ultimate version, to be frank. Or offer your own version? We did offer our own version. And I have to be frank, I don't think the version that we offered in the district court, I wasn't counsel, but the version that we offered, frankly, I don't think it limited much either. It sounded like it wasn't as good as the one Judge Pregerson gave. Well, yeah, I think basically... From your point of view. Well, from my point of view, even if the limiting instruction tracked Judge Pregerson's order to a T, I still think it doesn't really give the jury anything. But the instruction that Judge Keller gave, I think was even worse on the spectrum of things. I think it was worse. Didn't the instruction tell the jury that the only reason for admitting the evidence was to provide context to the Tate conversation? No, that's not the instruction that went to the jury, Your Honor. The instruction that went to the jury was that you can only consider the evidence to determine whether he's a member of the conspiracy. Now, the instruction that trial counsel offered did propose that language, but that was taken out. Okay. The government prevailed on Judge Keller to take that out. I got you. So Judge Pregerson ruled pre-trial, but Judge Keller had the trial. Right. There was a switch right before trial, and then it went back to Judge Pregerson for sentencing. So Judge Keller ended up just trying the case. But just to reiterate, I don't think the limited instruction limited to anything, because the jury got no guidance to determine how this phone call or how the gun arrest would signify one or the other, whether he's a member of the conspiracy or not. So for all we know, they would have interpreted it as... Well, but not having objected to the instruction, can you really argue about that? Well, I think the way the instruction comes into the analysis is when we determine whether this wasn't sort of a 4 or 3 issue, whether it should have been excluded. I believe this is where... But you can't rule and play dead at trial, let the judge give an inadequate instruction and say, well, look for all the prejudice, because the instruction was no good. If the problem could have been cured by a better instruction, then you have to suffer the consequence of not having offered a better instruction or not having objected to the instruction the judge gave. I mean, judge rules, right? You have to accept the loss and take it from there. And if the judge admits evidence over your objection, it seems to me the next thing you need to say, okay, Your Honor, if you're going to let it in, at least here's what you need to tell the jury to make sure that the prejudice is limited. We still object, but here's what you need to do. And if you don't do that, I don't think you can sit here and quibble about the fact that the instruction didn't do the job. I think we have to pretty much ask the question, would an adequate instruction have taken care of your problem? Well, actually, that would be my response. I don't think there is an instruction that could have been given that would have cured the error. If that's your argument, that's fine, and that's what you need to argue. Tell me why. Tell us why. Well, as we said in the briefing, basically, even if you tailor the limited instruction to the original order that Judge Pregerson made, all you're telling the jury is you're confining the consideration of the gun evidence to what is, I think, prejudicial and irrelevant point. And I think that's the best you can do with an instruction like that. And I cannot conceive of an instruction that would do that. I'm sorry. I don't understand what you're saying. Okay, let me try it again. Be concrete. Sure. You know, what would the instruction have said, and why would it have been inadequate? Well, my point is that evidence is completely irrelevant, and it's so prejudicial that no matter what instruction you tell the jury, it wouldn't really help. Because the evidence that somebody is arrested late at night with a loaded gun that is described as a jury as a loaded cannon, and on top of that, given the sort of really lack of any connection to the conspiracy, no matter what limited instruction you're going to give, what you end up is you end up with propensity evidence that is by nature so prejudicial that you can't really tell the jury anything that is going to unring the bell. I don't know. Does that help? It helps us understand your argument. Right. Well, that's all I may make. Well, but you haven't explained to me why an instruction that tells a jury very explicitly, you know, you have to consider it, you know, you're not to consider it that this is a, you know, bad man, and carrying a gun isn't necessarily illegal, you're not to draw on no influence of that. There are lots of things you could tell a jury to cabin their understanding of it. Well, why wouldn't that kind of instruction or fulsome instruction in that regard? Because given the nature of this evidence, it's so explosive in its nature then. Oh, it's not. Some things you can tell the jury until you're put in jail. It's not charmo station, it's a gun, you know, half of the public thinks it's, you know, it's your right to carry a gun in a holster in public, you know, I don't know. Well, but he's not arrested with a gun in a holster in the desert. He's arrested late at night at a party with a loaded gun in his pocket. And I think when you take that universe of facts, my position is no matter what you tell the jury, it's not going to go away from their minds. And I think given the length of the... Well, I'm sorry, I don't get it. I mean, having a gun in your pocket, it's not like having somebody's cut off finger in your pocket. I mean, you know, it's... What I mean is it puts serious doubts in the jury's mind that this is a man of a law-abiding nature. If you're arrested late night with a loaded gun in your pocket, I think that creates serious... And even the judge says, look, there's nothing illegal about it, you have to go on no inference that there was anything illegal about having the gun, you think that's not enough? No, I don't... Don't you presume that juries follow instructions? Well, we generally presume that juries follow instructions, but there's also Supreme Court authority that certain things are so explosive in nature that they sort of defy no matter what limited instructions you're going to give to... You think guns in pockets are like that? Yes, Your Honor, I do. Even somebody who's a policeman, let's say. Well, he's not a policeman. I mean, that's a pretty material fact. You know, he's not a policeman, he's arrested by police at a late night party with a loaded gun in his pocket. I think we can all agree that he's not a policeman. I'm sorry? I think we can all agree that he's not a policeman. But I think that's a material fact in your hypothetical. If you take it out, then... Well, what I'm suggesting is that there are circumstances in which a jury could be allowed to believe that there's nothing illegal or improper about carrying of the gun itself, and it is considered the carrying of the gun as being perfectly lawful, and there are no inferences of illegality from it. And so this is not like, you know, carrying something that's inherently loathsome in your pocket. This is something that is a little bit situational, and I don't see why the jury couldn't be instructed that in this situation, it's not something that they should consider adversely. Well, Your Honor, I guess without getting into a more philosophical argument as to whether under any circumstances having a gun in your pocket is so prejudicial you can't overcome it, I would say on the facts of this case, given everything that we know about Mr. Greer and how he was arrested, I think you could not give a jury a limiting structure that would take care of the problem. I guess that's my position. Okay. But you do agree we have to consider the situation as if an adequate instruction or the best possible instruction had been given. Well, I think that's a factor. That's one of the factors that you consider in the 403 analysis. Yes, I would agree with that. Okay. Thank you. Thank you, Your Honor. Good morning. Jean-Claude Andre on behalf of the United States. Did you try the case? No, I did not. I was brought in after I was brought in just for the appeal. Let me ask you a question just to get, in my mind, the clear sequence of events. My understanding is the government brought to the attention of the district court prior to trial that it wanted to use the fact that he was arrested with a gun as part of their evidence, correct? The government gave notice to the defense, and then the defense moved in limiting to exclude everything relating to that arrest, so both the gun and the narcotics that was secreted. So it's argued in front of Judge Pregerson, correct? Correct. And Judge Pregerson says, I'm going to allow it in because for the limited purpose of providing context to this telephone conversation. Yes. This reported cell phone conversation. Correct? Correct. And that's the ruling. Correct. The matter is set for trial. Correct. And do I understand that at some point after the ruling, the defense offered its own instruction relative to the gun? Well, Judge Pregerson didn't ever articulate an instruction to be given. No, no, no, no, no. Did the defense, after Judge Pregerson indicated he would allow that evidence in for the limited purpose of providing context to the recorded telephone conversation, after he so ruled, did the defense offer its own version of a limiting instruction? It did. Okay. And when the matter came to trial and it came time to give an instruction, did the district court give a different instruction? It did. Doesn't the fact that the defense offered after the ruling its own version of an instruction relieve it of the responsibility to object to the instruction given? I would actually agree with that, Your Honor, yes. I don't think there's a waiver or a plain error issue with respect to, well, we're not in plain error territory because this appeal is not about the instruction. It's about the admission of the gun. Didn't the instruction that the defense offered focus on what Judge Pregerson had ruled, that is, the only reason for allowing this into evidence, its limited value was to provide context to the conversation? Originally, the defense offered that instruction. The defense then came back with a subsequent version that said the evidence may be considered both with respect to defense participation in the conspiracy and to give context to the phone call. The instruction that Judge Keller gave, after the case was transferred to him, excised the last portion and stopped after the word conspiracy. Okay. I'm clear. Thank you. When Mr. Robyoff said that he believes that if the gun was excluded, the phone calls would be out too. One more question. Absolutely. Just so I'm clear. The gun never came into evidence. The gun did not. The physical gun. No. In fact, Judge Breyer. The only thing that came into evidence was that the officer said when we arrested him, he had a gun. That's correct. In fact, Judge Pregerson, when he issued his preliminary ruling, said that the manner in which the evidence relating to the gun would come in would be left for decision at trial. And so at trial, when my colleague actually attempted to introduce the gun, Judge Keller said, no, no, you don't need that. You've gotten enough in. And that was the end of the matter. As I was about to say, when Mr. Robyoff said that if the gun was excluded, so the phone call would have been excluded too. I think that comment actually exemplifies this case. And this case is really one of buyer's remorse. Defendant moved to exclude the gun and the drug evidence. Defendant never objected at all to the introduction of the phone calls. And, of course, Judge Pregerson said, these are his words, those calls were obviously admissible. So any objection probably would have been overruled. But the problem now is that the attack on appeal is really about the phone calls. But once the phone calls are in, whether because defendant didn't object to them or because the district court in its discretion believed that they were obviously admissible, you have to make sense of them. Or Mr. Robyoff is right. There might be a 403 confusion problem with respect to those calls. The reality is that the calls were in, and then we have to figure out what to do with them. And Judge Pregerson, exercising his discretion, properly determined that the best way to make sense of the calls was to allow the limited admission of a description of the arrest with a gun. It wasn't an abuse of discretion because there is this isn't a matter where the evidence is explosive, as Mr. Robyoff has said. The test under 403 is whether prejudice is dragging in probative value by its heels. That's from this Court's Hankey decision. Of course, here, over at Act 59 in the original indictment, over at Act 21 in the trial indictment that went back to the jury, charged this particular May 17th fallout call as an overt act before there was the conspiracy. This fallout call between Palm and Thompson describing Jamar's arrest and all these heats, namely the gun that he was arrested with, that was part of the crime. And so that's why we believe, and why we believe Judge Pregerson adopted our analysis, that this falls squarely within the complete the story doctrine that, contrary to Mr. Robyoff's 20HA letter, this Court has applied since at least 1939, has done so repeatedly since, and has even done so in cases where there's far more potential for prejudice, such as in the Daley case that we cited both in our brief and in our response to the 20HA letter. Of course, in that case, this Court found no problem under the inextricably intertwined doctrine in allowing evidence that an 11-hour shootout between the defendant and the police was inextricably intertwined with his felon and possession charge. I mean, I don't know what could be possibly more prejudicial than an 11-hour shootout with police. And certainly in that case, something could have been crafted to try to sanitize that evidence. This Court said no. The district court didn't have to do that. It wasn't an abuse of his discretion to allow that evidence to come in. The same is true here. With respect to... I take it the government concedes error on the identification, the name, condition? Yes. There's no way to really reconcile those. And so when there's a material discrepancy in that situation, the government believes that the case would have to either be remanded, which is what we said was fine in the brief, but if this Court were to affirm on the meat and potatoes issue, the Court could also correct the supervised release condition issue with a corrective instruction. So I'm not sure it has to go back to Judge Pragerson for that interlineation. But you agree it's error? I would believe that it's error to deviate from the orally pronounced condition in a material way. Okay. Thank you. Thank you. Thank you. Secretary, may I have a minute? Yes, Mr. Shockley. You may have a minute. Okay. Two things. Number one, I'll go back to my original point about sort of the, which is the driving force, the gun or the phone call. And I guess I respectfully disagree with Mr. Undrad. The phone calls really have no meaning without the gun and they have no relevance without the gun. So if you decide that you can't bootstrap the gun through the phone call. This is what I think the government is doing. Well, but you didn't object to the phone calls. Well, we objected to any evidence of the gun coming in. And assuming that they've established the foundation that the phone call is about the gun, I think that formulation is broad enough to cover the phone calls. I mean, I would direct the court's attention to the moving papers in the district court. Any evidence pertaining to the gun. Well, assuming you have an objection, why is Judge Ferguson right in saying clearly the phone calls come in? Well, the theory on which it was admitted was intrinsically intertwined. And I think the judge, with due respect, Judge Ferguson is incorrect because if you look at the gun arrest itself, it has nothing to do with the charged drug conspiracy. No, no. It's just the phone conversations are admissible. And the gun arrest is inextricably intertwined. Why isn't Judge Ferguson right that the phone calls are clearly admissible? Well, because I can't think of a purpose for which the phone calls would be admissible without the guns. Shows his participation in the conspiracy. Well, first of all, I think if you haven't connected the gun in that phone call, then I don't think it really shows anything. I mean, I think it would be, if you had to excise any reference to the gun from that phone call, I think it, frankly, would be a bunch of gibberish that the jury wouldn't understand. That's why, frankly... The fact they wouldn't understand it does not make it irrelevant. It just shows that excising is not the right remedy. I mean, the phone call, as it stands, is relevant. You're saying, well, you know, if you had to sanitize it to remove the gun, then you'd make a gibberish, but that wouldn't make it irrelevant. Well, we'll make it 403. Because, really, it would have no, without the guns, it definitely has no relevance. Well, it would, any possible relevance would be outweighed by the danger of unfair prejudice. Okay. Thank you. Thank you. Case SIU will stand submitted. Okay, next case, United States v. Mendoza. And we'll take our break after a hamareo. Before the last two cases. Now, Mendoza. Thank you.
judges: Kozinski, Hawkins, Fisher